IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ROBIN QUINN FOGLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 113-173 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,[1] | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Robin Quinn Fogle ("Plaintiff") appeals the decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I.  BACKGROUND

Plaintiff applied for DIB on March 26, 2010, alleging a disability onset date of February 1, 2009. Tr. ("R"), pp. 130-31. She last met the insured status requirements of the Social Security Act on March 31, 2009. R. 24, 171. The Social Security Administration

---

[1]For ease of reference, the Court will hereinafter refer to the Acting Commissioner as "Commissioner."

denied Plaintiff's application initially, R. 74-77, and on reconsideration, R. 82-86. Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"), R. 87-88, and the ALJ held a hearing on May 12, 2011. R. 38-71. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Mary Cornelius, a Vocational Expert ("VE"). Id. On February 7, 2012, the ALJ issued an unfavorable decision. R. 19-37.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of February 1, 2009, through her date last insured of March 31, 2009. (20 C.F.R. § 404.1571 *et seq.*).

2. Through the date last insured, the claimant had the following severe impairment: multiple sclerosis (20 C.F.R. § 404.1520(c)).

3. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526).

4. Through the date last insured, the claimant had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. 404.1567(b).[2] Thus, through the date last insured, the claimant was capable of performing past relevant work as a sales associate and realtor.[3]

---

[2]"Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it involves sitting most of the time with some pushing and pulling or arm or leg controls. . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[3]Because the ALJ determined Plaintiff could perform her past relevant work, the sequential evaluation process could have stopped, and the ALJ could have concluded at that point Plaintiff was not under a disability, as defined in the Social Security Act. See 20 C.F.R. § 404.1520(a)(4)(iv).

2

5. In the alternative, considering the claimant's age, education, work experience, and RFC for the full range of light work, the Medical-Vocational Guidelines, Rule 202.21, 20 C.F.R. Part 404, Subpart P, Appendix 2, directs a finding of "not disabled." Moreover, even if there were evidence to substantiate the claimant would have been limited to a sedentary[4] exertional capacity prior to her date last insured, there were still other jobs in the regional and national economy claimant could have performed, including Information Clerk, Surveillance System Monitor, and Order Clerk. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a).) Therefore, the claimant was not under a disability, as defined in the Social Security Act, at any time from February 1, 2009, the alleged onset date, through March 31, 2009, the date last insured. (20 C.F.R. § 404.1520(f)).

R. 24-32.

When the Appeals Council denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ did not properly analyze her limitations with regard to standing, walking, and using a cane. See doc. no. 15 ("Pl.'s Br."). The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should therefore be affirmed. See doc. no. 16 ("Comm'r's Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence,

---

[4]"Sedentary work" is defined as involving:

lifting no more than 10 pounds at a time and occasional lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (*per curiam*). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d

1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Plaintiff argues that the ALJ erred in establishing Plaintiff's RFC because the ALJ rejected limitations on Plaintiff's ability to stand and walk based on her reported use of a cane. Pl.'s Br., p. 10. In particular, Plaintiff argues the ALJ "fails to evaluate or even discuss the medical evidence from Dr. John Blevins," a physician who submitted two sets of office treatment records, one dated September 3, 2010 and one dated January 19, 2011. Id. at 12; see also R. 686-88 (Ex. 20F); R. 692-97 (Ex. 22F). Plaintiff also suggests, without the benefit of particularized argument, that the ALJ's alternative finding Plaintiff could perform the sedentary jobs identified by the VE is also not supported by substantial evidence because of her reported use of a cane. Pl.'s Br., p. 14.

#### A. The Relevant Time Period Under Consideration Is the Alleged Onset Date through the Date Last Insured.

Plaintiff alleges she became disabled on February 1, 2009, R. 130, and her date last insured for DIB purposes is March 31, 2009, R. 171. Thus, although Plaintiff's brief does not address the subject, the relevant time period in this case is very limited.

Plaintiff bears the burden of proving she is disabled, and because Plaintiff applied for DIB, she must demonstrate disability on or before the last date for which she was insured. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*). Thus, to prove her eligibility for DIB, Plaintiff had to prove she suffered from a disability between her alleged

onset date of February 1, 2009, and her last insured date of March 31, 2009. Mason v. Comm'r of Soc. Sec., 430 F. App'x 830, 831 (11th Cir. 2011) (*per curiam*). "If a claimant becomes disabled [a]fter [s]he has lost [her] insured status, [her] claim must be denied despite [her] disability." Id. (citing Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979)[5]).

Here, Plaintiff mentions her last insured date only once, and even then, only as a recitation of the ALJ's findings in the statement of the administrative proceedings. Pl.'s Br., p. 2 (citing R. 24.) Plaintiff presents nearly five pages of medical history covering dates from 2008 to 2011 and five more pages of legal argument without once mentioning that the information relevant to her DIB application is that which pertains to her meeting the disability criteria between February 1 and March 31, 2009. See Pl.'s Br., pp. 2-6, 10-14. Having determined that the ALJ's disability analysis is appropriately limited to the period from February 1 to March 31, 2009, the Court turns to the argument that the ALJ erred in his consideration of treatment notes from John D. Blevins, M.D.

B. **The ALJ Appropriately Discounted the Treatment Notes of Dr. Blevins.**

Plaintiff primarily rests her argument about ambulatory problems requiring use of a cane on medical treatment notes dated September 3, 2010, from Dr. Blevins. Id. at 12-14. According to Plaintiff, the ALJ failed to discuss, let alone evaluate, the evidence from Dr. Blevins, which includes the following notation under the heading of "Recommendations":

> She carries a cane and her gait becomes unsteady and very limited after walking distances such as walking from the parking lot to this office. Also, at one point she became quite wobbly and ataxic while standing in

---

[5]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

6

the hallway checking out, requiring her to hold on to the counter or the cane.

R. 688.

Plaintiff's argument falters from the outset in that the ALJ did discuss and evaluate medical evidence from Dr. Blevins. When reviewing the medical records, the ALJ noted that many of the "records submitted are dated past the claimant's date last insured (Exhibits 7F, 8F, 9F/51-56, 10F, 11F, 20F, 21F, 22F, 23F). Although considered, these records would not establish that the claimant was disabled prior to the expiration of her date last insured." R. 27. Exhibits 20F and 22F are the treatment notes from Dr. Blevins, including the notation about Plaintiff's need to steady herself on the checkout counter or on a cane. R. 686-88, 692-97. The ALJ also mentions Dr. Blevins by name in discussing his treatment notes from January 19, 2011. R. 28. The notes suggested that although Plaintiff no doubt suffers symptoms of multiple sclerosis, she was responding to medication that allowed a level of functioning that would not warrant a finding of disabled even as of the date of the exam, which was just two months shy of two years past her last insured date. R. 28 (citing Ex. 22F, R. 692-97).

Beyond the misstatement of the record, Plaintiff's argument regarding Dr. Blevins fails for a second reason. Evidence, including opinion evidence from a treating physician, which is from after the relevant time period and does not describe a claimant's condition during the relevant time period may be rejected as irrelevant. Hughes v. Comm'r of Soc. Sec. Admin., 486 F. App'x 11, 13-14 (11th Cir. 2012) (*per curiam*) (discounting portions of treating physician's opinions as "not particularly relevant to whether [the claimant] was disabled for purposes of DIB" that were not based on the claimant's condition prior to last insured date); Grantham v. Colvin, CV 312-046, 2013

WL 3804581, at *4 (S.D. Ga. July 18, 2013); see also Lofgren v. Astrue, 1:06-CV-00143MP-AK, 2008 WL 1323396, at *1 (N.D. Fla. Apr. 4, 2008) (ALJ's decision to reject two treating physicians' opinions was supported by substantial evidence where he did so because they were "rendered significantly after the insured status expired, and neither doctor gave [an] opinion as to [p]laintiff's condition as it existed during [p]laintiff's relevant period of disability.") When the medical record contains an opinion dated after the last insured date that a claimant was disabled prior to the last insured date, that post-insured opinion will be credited when it is consistent with pre-insured date medical evidence. Mason, 430 F. App'x at 832.

Here, the ALJ repeatedly mentioned throughout the decision that the relevant time period ended as of the date last insured, March 31, 2009. See R. 22, 24, 26, 27, 28, 29, 30, 32. The ALJ also specifically explained that many of the medical records, including those from Dr. Blevins, related to a time period past the last insured date. R. 27. Indeed, the very treatment notes by Dr. Blevins upon which Plaintiff relies for her argument that the AJL improperly ignored her need for a cane also state that Plaintiff "has been using a cane since August 2009," R. 687, a date months past her last insured date. Plaintiff has not established Dr. Blevins' notes describe her condition prior to her last insured date, let alone that the notes were consistent with pre-insured date medical evidence.

In sum, contrary to Plaintiff's arguments, the ALJ did acknowledge Dr. Blevins' records and appropriately discounted them as pertaining to a time period past Plaintiff's last insured date.

C. **Even if the Court Were to Ignore that Plaintiff Relies on Medical Records Outside the Relevant Time Period, She Fails to Show She Could Not Perform Sedentary Work.**

Plaintiff spends the majority of her briefing arguing that the ALJ erred in assigning an RFC for light work that allowed for her to return to her past relevant work as a sales associate and realtor. See generally Pl.'s Br. However, the ALJ made an alternative finding after hearing testimony from the VE that there were jobs Plaintiff could perform at the sedentary exertional level. R. 31-32; 67-68. The only reference to sedentary work in the argument section of Plaintiff's brief is a conclusory citation to Social Security Ruling 96-9p and a general assertion that use of a cane may erode the occupational base for an individual.[6] Pl.'s Br., p. 14. In any event, the underlying theme of Plaintiff's objection to the ALJ's RFC determination – either for a return to her past relevant work at a light exertional level or for performance of jobs at the sedentary exertional level – is that the ALJ erred in determining that Plaintiff did not need a hand-held assistive device for walking and standing.

To find that a hand-held assistive device, such as a cane, is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7.

---

[6]Plaintiff's citation to 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00(J)(4) is inapposite in that she has never argued that she met or equaled a Listing at step three of the sequential evaluation process. To the extent § 1.00(J)(4) discusses examination of an individual who uses a hand-held assistive device and acknowledges that using such a device may impact an individual's RFC, the section also specifically states, "The medical basis for the use of any assistive device (e.g., instability, weakness) should be documented." As discussed above, there are no medical records from the relevant time period documenting Plaintiff's need for, or use of, a cane.

Moreover, "SSR 96-9p requires more than generalized evidence of a condition that might require a cane. It requires 'medical documentation *establishing the need* for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed.'" Staples v. Astrue, 329 F. App'x 189, 192 (10th Cir. 2009) (quoting SSR 96-9p); see also Reynolds-Buckley v. Astrue, No. 8:10-CV-1668-T-TGW, 2011 WL 2460919, at *5 (M.D. Fla. June 20, 2011) ("Significantly, the record contains no prescription for a cane, or other indication that the plaintiff requires an assistive device . . . . Since the plaintiff has not provided any [medical documentation establishing the need for a hand-held assistive device], she has failed to show that the use of a cane is medically required."). Thus, even if the Court were to consider that Dr. Blevins' records discussing Plaintiff's use of a cane after her last insured date were relevant to the time period under consideration, they do not provide the level of specificity required by SSR 96-9p.

Additionally, the Court reiterates that in addition to finding Plaintiff could perform her past relevant work at the light exertional level, the ALJ provided an alternative finding that Plaintiff could perform sedentary work. R. 32. SSR 96-9p provides:

> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand.

SSR 96-9p, 1996 WL 374185, at *7. Thus, even if Plaintiff had pointed to evidence that use of a cane was medically necessary during the relevant time period, which she has not,

10

such evidence would not automatically disqualify her from consideration for sedentary work.

Substantial evidence supports the ALJ's decision not to include the use of a hand-held assistive device for ambulation in Plaintiff's RFC. As demonstrated in the ALJ's review of the medical evidence of record and summarized in the Commissioner's brief, Plaintiff's visits to her neurologist, Harold McGrade, M.D., resulted in descriptions of an unremarkable gait and station in January of 2009, (R. 469), and follow-up visits in February and March of 2009 did not mention gait but rather discussed developing issues regarding Plaintiff's face and neck areas, (R. 466-67). The ALJ also reviewed the medical evidence showing that in February 2009, an emergency room visit did not reveal the use of a cane or problems with gait. R. 30 (citing Ex. 2F). Plaintiff complained of facial numbness and swelling, but not weakness of her extremities; her gait and ambulation were recorded as "normal." R. 351-53.

The ALJ acknowledged Plaintiff started exhibiting signs of fatigue, muscle aches and right leg pain in 2008, but treatment with medication helped the symptoms. R. 30 (citing Ex. 5F). The ALJ also reviewed the information from Plaintiff's physical therapist Elizabeth Funk, who did not see Plaintiff until December 2009, months after her last insured date. R. 28-29, 471-86. The ALJ explained his reasons for discounting the limitations indicated, including that a physical therapist is not considered an "acceptable medical source." R. 29; 20 C.F.R. §§ 404.1513(a) & (d)(1). Moreover, co-workers reported Plaintiff worked in the real estate business until the fall of 2009. R. 30, 58-59, 214-15. In March of 2010, Plaintiff's physician "noted that there was no objective data to warrant anything more aggressive than first-line injectable therapy," and the "overall picture [was] more symptomatic issues and not progression of disease." R. 30, 429. Plaintiff's self-completed

11

Function Report dated October 4, 2010, states that she had problems standing or walking for long periods or would have to use a wheelchair for shopping and need to use a cane, but the same report states that wheelchair was not prescribed until 2010, and the cane was either "suggested" or prescribed in August 2009, again both dates after Plaintiff's last insured. R. 164-65, 168.

In sum, the ALJ repeatedly acknowledged the progressive nature of multiple sclerosis but noted in the summation of his review of the medical evidence that Plaintiff's treatment for the disease was "rather conservative." R. 30. Plaintiff has not shown that the use of a cane was medically necessary during the small window of time relevant to her DIB application. Nor has she shown the ALJ's RFC determination and ultimate disability determination were not supported by substantial evidence.

IV. **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 18th day of July, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA